MARALYN ENGLISH (8468)
SCOTT YOUNG (10695)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145-5000
Telephone: (801) 521-9000
Facsimile: (801) 363-0400
mme@scmlaw.com
sy@scmlaw.com

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| ZOOBUH, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SAVICOM, INC., DBA MINDSHARE DESIGN, a California entity; DG INTERNATIONAL LIMITED, a foreign entity domestically registered in Delaware, <br><br> Defendants. | **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2), (4), and (5) and SUPPORTING MEMORANDUM** <br><br> Civil No. 2:17-cv-1098 <br><br> Judge Jill Parrish |

## STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION

Defendants DG International LLC and MindShare d/b/a Savicom (collectively "Defendants") move the Court to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(2), (4), and (5) because Plaintiff Zoobuh, Inc. ("Zoobuh") has not properly served DG International LLC ("DG LLC") and this Court cannot exercise jurisdiction over Defendants.

{00129290;1}                              1

# INTRODUCTION

This case involves a lawsuit arising from email communications allegedly sent in violation of the CAN-SPAM Act against two defendants with no and/or minimal contacts to Utah. The Court should dismiss this case against DG International LLC ("DG LLC") because it is not named in the Complaint and the summons served on DG LLC was addressed to the wrong corporate entity.[1] In addition, the Court should dismiss this case against DG LLC and defendant MindShare Design, Inc. ("MindShare") because the Court cannot exercise personal jurisdiction under the Utah long-arm statute, which confers jurisdiction to the extent allowed by constitutional due process. In the instant matter, the Court does not have general jurisdiction over either defendant because DG LLC and MindShare do not have continuous and systematic contacts to render them "at home" in Utah. Furthermore, neither DG LLC nor MindShare have purposefully availed themselves of the laws of Utah because they have not intentionally directed activity to Utah, which would make jurisdiction over them reasonable. Therefore, there is no personal jurisdiction in this case and the Court should dismiss the Complaint.

# STATEMENT OF FACTS

Zoobuh filed the instant Complaint on September 29, 2017, alleging violations of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(1), (2) and 7704(a)(1)(A) and damages pursuant to § 7706(g)(3). Zoobuh alleges that between January 2016 through the date of the Complaint, that DG International Limited (a company not served in this matter) and MindShare "transmitted or caused

---

[1] The Summons and Complaint named DG International Limited, however, that is a foreign entity with no legal relationship to DG International LLC. As such, DG International Limited has not been served. *See Webb v. Claimetrics Mgmt., LLC,* No. 2:08-cv-842-CW-PMW, 2009 WL 4730789, at *4 (D. Utah Sep. 7, 2009) ("A defendant named in a complaint in a civil case has no duty to answer or otherwise respond to the complaint until he or she is properly served with a summons and a copy of the complaint.").

to be transmitted" numerous commercial emails to Zoobuh's servers in Utah. (Compl. ¶¶ 21-22). Zoobuh claims that these emails bear "the characteristics of unlawful spam." (Compl. ¶ 20).

Zoobuh was first formed in 2002 and claims that it is a "widely recognized service provider of email, blog, and chat services." (Compl. ¶ 9).  Zoobuh claims that the Defendants are: (1) residents of Utah; (2) businesses organized and existing under the laws of Utah; and/or (3) that the "commercial emails" sent to Zoobuh's customers existing in Utah amounts to purposeful availment necessary for this Court to exercise personal jurisdiction over Defendants. (Compl. ¶ 5). Zoobuh's conclusory allegations cannot be supported for purposes of establishing personal jurisdiction over Defendants.

DG LLC is an email marketing company. (*See* Declaration of Sylvia van Baekel ("Baekel Decl.") ¶ 8, attached hereto as Exhibit A.)  It is a single-member LLC organized under the laws of Delaware. (Baekel Decl. ¶ 1).  DG LLC contracted with DG International Limited for the purpose of sending marketing emails to DG International Limited's customer lists. (Baekel Decl. ¶ 9).  One of those customer lists came from users who registered for the website xdating.com. (Baekel Decl. ¶ 9).  DG LLC used MindShare Design's email platform to send emails to users who registered for the xdating.com website. (Baekel Decl. ¶ 10).  Any marketing email sent from DG LLC to a user in Utah with an email account with Zoobuh was through the unilateral act of the Utah resident. (Baekel Decl. ¶ 11).  DG LLC is not registered or otherwise licensed to do business in Utah. (Baekel Decl. ¶ 12).  DG LLC has no offices, employees, property, and bank accounts in Utah and has never paid taxes in Utah. (Baekel Decl. ¶ 17-21).  DG LLC does not advertise in Utah, does not target Utah residents, and does not offer special deals to Utah residents. (Baekel Decl. ¶¶ 14-16).  DG LLC earns about one percent (1 percent) of its revenue from Utah. (Baekel Decl. ¶ 23).

And, importantly, DG LLC is not named in the Complaint and was provided with a summons that was addressed to a separate legal entity. (Baekel Decl. ¶¶ 3-7).

MindShare is an email service provider that is incorporated in the State of California with its principal place of business located in Oakland, California. (*See* Declaration of John Ludgey ("Ludgey Decl.") ¶¶ 1, 4, attached hereto as Exhibit B.) MindShare's email platform was used by DG LLC to send marketing emails to users who registered on the dating website, xdating.com. (Ludgey Decl. ¶ 5). MindShare has no control of the xdating.com website. (Ludgey Decl. ¶ 6). Any email sent via MindShare's platform to a resident of Utah who registered on the xdating.com website was through the unilateral act of the Utah resident. (Ludgey Decl. ¶ 7). MindShare is not registered to do business or otherwise licensed to do business in Utah. (Ludgey Decl. ¶ 8). MindShare has no offices, employees, property, and bank accounts in Utah and has never paid taxes in Utah. (Ludgey Decl. ¶¶ 13-17). MindShare does not advertise in Utah, does not target Utah residents, and does not offer special deals to Utah residents. (Ludgey Decl. ¶ 10-12). Finally, MindShare does not generate any revenue or profit from Utah or its residents or have any customers in Utah. (Ludgey Decl. ¶¶ 18-19).

## ARGUMENT

The Court should dismiss the Complaint against DG LLC for improper service of process and against both DG LLC and MindShare for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), (4), and (5).

### A. DG LLC Was Not Properly Served or Named in the Complaint

The Court should dismiss this action as to DG LLC pursuant to Rule 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure because DG LLC is not named in the Complaint and the

summons was addressed to a separate legal entity. Pursuant to Rule 4 of the Federal Rules of Civil Procedure, "service of process provides the mechanism by which a court . . . asserts jurisdiction over the person or party served." *Hukill v. Oklahoma Native Am. Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008). A defendant can move to dismiss the complaint for improper service under Fed. R. Civ. P. 12(b)(4) and (5). Here, Zoobuh failed to comply with the basic requirement that the summons "name . . . the parties." Fed. R. Civ. P. 4(a)(1)(A).

The plaintiff has the burden to establish proper service. *See Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (stating plaintiff bears burden of proof in establishing valid service of process). "A Rule 12(b)(4) motion challenges the form of the process rather than the manner or method of its service, while a Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint." *Higley v. Utah*, No. 2:14-cv-506-CW-EJF, 2016 U.S. Dist. LEXIS 39607, at *4-5 (D. Utah Jan. 29, 2016) (internal quotation marks and citation omitted). In short, Rule 12(b)(4) challenges the content of the summons for noncompliance with Rule 4(b). *See United States v. Sharon Steel Corp.*, 681 F. Supp. 1492, 1499 n.14 (D. Utah 1987). Meanwhile, a Rule 12(b)(5) motion challenges the mode of delivery. *Id.* In some cases, courts have "treated a combination of the two motions as a proper procedure." *Id.* (citation omitted).

Here, Zoobuh served DG LLC with a summons addressed to a separate legal entity, DG International Limited. Moreover, the Complaint names DG International Limited, but not DG LLC. Therefore, the Court should dismiss this action against DG LLC because it has not been named in the Complaint and service of process was defective.

### B. The Court Lacks Personal Jurisdiction Over Both Defendants

The court should grant Defendants' motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure because the Court cannot maintain personal jurisdiction over Defendants. On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), Zoobuh carries the burden to establish personal jurisdiction over DG LLC and MindShare. *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996) ("The plaintiff bears the burden of establishing personal jurisdiction over the defendant."). A plaintiff may support a prima facie showing of jurisdiction via affidavit or other written materials alleging "facts that if true would support jurisdiction over the defendant." *OMI Holdings Inc. v. Royal Ins. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1984)).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999). Plaintiff filed this action for violations of the Can-Spam Act. The Can-Spam Act does not authorize nationwide service of process or jurisdiction so Fed. R. Civ. P. 4(K)(1)(A) "refers us to the [Utah] long-arm statute, which is coextensive with constitutional limitations imposed by the Due Process Clause." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). To satisfy the due-process analysis, a court must consider whether the defendant has sufficient minimum contacts, and then if so,

"consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings, Inc. v. Royal Ins. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citing *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)). Personal jurisdiction through minimum contacts can either be general or specific.

Defendants' contacts with Utah are insufficient to permit the exercise of personal jurisdiction over them under the test for general or specific jurisdiction.

### 1. This Court Lacks General Jurisdiction Over DG LLC and MindShare Because They Cannot Be Considered "At Home" in Utah

A court can exercise general jurisdiction over an out-of-state business or corporation if the plaintiff demonstrates that defendant's "affiliations with the forum State are so 'continuous and systematic' as to render [him] essentially at home in the forum State." *Daimler, AG v. Bauman*, 134 S. Ct. 746, 754 (2014). This is a "high burden." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080-81 (10th Cir. 2004) (finding that corporate defendant's U.S. subsidiary being licensed to do business in the forum State and two dozen transactions over eight years and none in the past four years is insufficient to demonstrate continuous and systematic). Furthermore, mere "business dealings with a person or entity in the forum state does not subject him to general jurisdiction there." *Shrader v. Biddinger*, 633 F.3d 1235, 1246-47 (10th Cir. 2011). Finally, limited sales activity in the forum state will not subject a defendant to general personal jurisdiction. *See SIBU, LLC v. Bubbles, Inc.*, No. 2:11-cv-00477, 2011 WL 6028835, at *4 (D. Utah Dec. 5, 2011).

The Tenth Circuit considers four factors in determining whether general jurisdiction has been established: "(1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit

business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings, or bank accounts; and (4) the volume of business conducted in the state by the corporation." *Caspers Ice Cream, Inc. v. Fatboy Cookie Co.*, No. 1:12-CV-133, 2013 WL 2367976, at *3 (D. Utah May 29, 2013) (quoting *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 95 (10th Cir. 2012)).

Here, Zoobuh cannot establish that Defendants are "at home" in Utah. DG LLC is a single-member LLC organized under the laws of Delaware. Furthermore, DG LLC has no offices, employees, bank accounts, or property in Utah. DG International does not direct any marketing toward Utah or solicit business in Utah and derives minimal business from residents in Utah who are customers. MindShare's principal place of business is in California and is incorporated in California. MindShare, like DG LLC, does not have offices, employees, bank accounts, or property in Utah. MindShare does not advertise in Utah, solicits no business in Utah, and derives no revenue from residents of Utah. Thus, this Court cannot exercise general jurisdiction over DG LLC or MindShare.

### 2. This Court Lacks Specific Jurisdiction Over DG LLC and MindShare Because They Have Not Intentionally Directed Activity at Utah

This Court also cannot exercise specific personal jurisdiction over Defendants. Specific jurisdiction requires a plaintiff to show "that the defendant has minimum contacts with the forum state," and if so, to show that the exercise of jurisdiction over the defendant is reasonable. *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (citing *Burger King*, 471 U.S. at 476-77). The test for minimum contacts for purposes of specific jurisdiction encompasses two requirements: "(i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the]

{00129290;1}                                                  8

defendant's forum-related activities.'" See *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Shrader*, 633 F.3d at 1239).

The purposeful direction requirement "ensures that the defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts." *Sys. Designs, Inc. v. New CustomWare Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003) (citing *Burger King*, 471 U.S. at 475). Moreover, "the mere foreseeability of causing an injury in the forum state is, standing alone, insufficient to warrant a state exercising its sovereignty over an out-of-state defendant." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1077 (10th Cir. 2008). However, "where the defendant deliberately has engaged in significant activities within a State . . . he manifestly has availed himself of the privilege of conducting business there." *Old Republic*, 877 F.3d at 905.

The Tenth Circuit recently analyzed purposeful direction under three frameworks: (1) continuing relationships;[2] (2) market exploitation; and (3) harmful effects. Here, Defendants have not purposefully directed activities to Utah to satisfy any of these frameworks, and as such, there is no personal jurisdiction over Defendants.

### (a) Defendants' Do Not Exploit the Utah Market

Defendants did not exploit the Utah market and have not purposefully availed themselves of the laws of Utah. "Continuous and deliberate exploitation of the forum state market can satisfy the minimum contacts standard for specific jurisdiction over an out-of-state defendant in a suit

---

[2] The "continuing relationships" test looks to the parties: (1) prior negotiations; (2) contemplated future consequences; (3) terms of the contract; and (4) course of dealing. *Old Republic*, 877 F.3d at 909. Here, there is no relationship between Zoobuh and Defendants—there was no prior negotiations, no contract, no contemplated future consequences, and no course of dealing.

arising from its related sales there." *Old Republic*, 877 F.3d at 914. The Tenth Circuit considered: (1) sales volume, customer base, and revenue; and (2) advertising targeting the forum state. *Id.*

In *Old Republic*, the out-of-state defendant manufactured airplane engines, and through its website, allowed airplane repair businesses to access its online service manuals for an annual fee. *Id.* at 900. The plaintiff was an insurance company that insured a Colorado based airplane repair business. *Id.* The Colorado-based airplane repair business accessed and consulted one of defendant's manuals in servicing an airplane. *Id.* That airplane later crashed and plaintiff-insurer sued defendant in Colorado claiming that defendant's manuals contained defective information. *Id.* at 901. Defendant moved to dismiss based on personal jurisdiction. *Id.* The court found, *inter alia*, that defendant did not exploit the market of Colorado to satisfy purposeful direction. *Id.* at 904-908. The court found that in the five years preceding the crash, about 20 airplane repair businesses paid subscription fees to defendant to access its manuals. *Id.* at 905. Moreover, the court found that there was no evidence that defendant placed physical advertisements in Colorado or targeted Colorado with geographically-restricted online ads. *Id.* at 906. The court found that plaintiff had not established purposeful direction based on defendant's marketing and sales to Colorado customers. *Id.* at 907.

In *SIBU*, this Court dismissed the complaint based on lack of personal jurisdiction against the out-of-state defendant who operated a website. *See SIBU, Inc.*, No. 2:11-cv-00477, 2011 WL 6028835, at **2-3 (D. Utah Dec. 5, 2011). The court found, *inter alia,* that the defendant's website did not "direct advertising or sales solicitations at Utah residents" and its revenues from Utah residents was roughly 0.001 percent of the sales from the website since 2007. *Id.* at *10; *but see uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 432-33 (7th Cir. 2010) (defendant sold to

"hundreds of thousands of customers in the [forum] state" and earned "millions of dollars in revenues from the [forum] state each year") (*cited in* 877 F.3d at 906).

In the instant matter, DG LLC derives one percent (1 percent) of its revenues from Utah. DG LLC does not advertise in Utah, offer any special deals to Utah residents, or have any connection to Utah. MindShare derives no revenue from Utah, and like DG LLC, does not advertise in Utah, offer any special deals to Utah residents, or have any connections to Utah. Under the "market exploitation" framework for purposeful direction, Defendants' activities and connection to Utah are insufficient to establish personal jurisdiction over Defendants.

### (b) Defendants Did Not Intentionally Aim Conduct at Utah

The court should grant Defendants' motion to dismiss because they did not intentionally direct activities at Utah. Purposeful direction under the "harmful effects" test has three elements: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Shrader*, 633 F.3d at 1240 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008). The Supreme Court has cautioned that "the plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

In the internet context, the Tenth Circuit has found that "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Shrader*, 633 F.3d at 1241. Indeed, "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction." *Id.* (citation omitted). Something "more" is required such as "indications that a defendant deliberately directed its message at an audience in the forum state

and intended to harm the plaintiff occurring primarily or particularly in the forum state." *Id.* at 1241; *see also Xactware*, 402 F. Supp. 2d at 1364 (courts "have looked to find 'something more' that creates actual acts directed at the forum state other than the mere existence of an interactive website") (citing *iAccess, Inc. v. WEBcard Technologies, Inc.*, 182 F. Supp. 2d 1183, 1187-89 (D. Utah 2002)). In short, "the forum state itself must be the focal point of the tort." *Id.* at 1241.

In *SIBU*, the court found that the defendant website operator did not purposefully direct activities at Utah because the "website does not specifically target residents of Utah" and "offer[ed] no special deals for residents of Utah." *SIBU*, 2011 WL 6028835 at *1. The court also found that the sales earned from Utah was "the result of 'unilateral activity' of the Utah buyers." *SIBU*, 2011 U.S. Dist. LEXIS at *10.

The Tenth Circuit in *Old Republic* also found that defendant's conduct did not amount to purposeful direction. *Old Republic*, 877 *F.3d at 904-908*. The court pointed out that something more is required than simply showing "harm suffered by a plaintiff who resides in the forum state." *Id.* at 907. The court found that plaintiffs failed to allege facts, beyond conclusory allegations that defendants targeted Colorado, just as here, Zoobuh cannot show that Defendants targeted Utah, beyond conclusory allegations. *See Xactware*, 402 F. Supp. 2d 1359, 1364 (D. Utah 2005) (finding that plaintiff "presented no evidence which demonstrates that [defendant] intentionally targeted Utah residents"). DG LLC sent emails to residents of Utah who signed up for the xdating website and MindShare was the platform used to send those emails. This conduct can hardly amount to targeting Utah residents. Instead, the conduct at issue in this case is the result of unilateral activity of Utah residents similar to the court's finding in *SIBU*. *See also Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 207 F. Supp. 3d 1213, 1215 (D. Colo. 2016) ("[I]t is defendants, not third parties,

who must create contacts with the forum state."). Indeed, Defendants did not intentionally direct any activities to Utah. Even if Zoobuh alleges that Defendants were aware that Utah residents accessed the xdating.com website and registered as users, mere awareness does not amount to "targeting." *Old Republic*, 877 F.3d at 908. Accordingly, the Court should dismiss the Complaint against DG LLC and MindShare because there is no basis to find personal jurisdiction.

### 3. Traditional Notions of Fair Play

To the extent that the Court finds that the factors to exercise specific personal jurisdiction have been met, the Court should not exercise jurisdiction over Defendants because it would offend "traditional notions of fair play and substantial justice." *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)). In deciding whether the exercise of jurisdiction is reasonable, courts consider:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies

*Id.* at 1095 (citing *Asahi*, 480 U.S. at 113).

Here, the Defendants are out-of-state entities and most of the witnesses are located in California and Delaware. The evidence is also located in California and Delaware. Indeed, Defendants do not have offices, employees, bank accounts, or any connection to Utah in this matter. In addition, Utah's interest in resolving a CAN-SPAM case is minimal as DG LLC derives roughly one percent (1%) of its revenues from Utah residents and there are no legal questions that

implicate Utah law.  Thus, it would be unreasonable for the Court to exercise personal jurisdiction over DG LLC or MindShare and therefore the Complaint should be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants request that this Court grant its motion to dismiss the Complaint as to DG LLC for insufficient service of process and for lack of personal jurisdiction over DG LLC and MindShare.

DATED this 16th day of January, 2018.

                                              SNOW, CHRISTENSEN & MARTINEAU

                                              */s/ Scott Young*
                                              Maralyn English
                                              Scott Young
                                              *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of January, 2018, I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2), (4), and (5) and SUPPORTING MEMORANDUM** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service.

*/s/ Scott Young*

4835-8440-9690, v. 1